**In re MEADOW GLEN, LTD., the Appleridge, Ltd., Thousand Oaks, Ltd., Debtors.**

**Bankruptcy Nos. 87–50294, 87–50514 and 87–51236.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

June 1, 1988.

Frank B. Lyon and J. Ray Oujesky of Lynch, Chappel, Allday & Alsup, Austin, Tex., and Patrick McManemin of Gardner,

Carton & Douglas, Dallas, Tex., for debtors.

Alfredo R. Perez and Susan C. Matthews of Bracewell & Patterson, Houston, Tex., for First Nationwide Bank.

## AMENDED MEMORANDUM OPINION

R. GLEN AYERS, Jr., Chief Judge.

The three cases addressed in this opinion are single asset real estate cases. Each Debtor is an operating apartment complex. Aran B. Katz is the general partner of each debtor and the first lien on the assets of each is held by First Nationwide Bank (hereinafter FNB). The current market value of the assets of each debtor is below the amount of the debt secured by the liens held by FNB. The deficiencies average five million dollars per case.[1] While the loans are "no-recourse" loans, FNB has elected to be treated as partially secured and partially unsecured creditor under § 1111(b).

The plans in each case are identical. The plans classify unsecured creditors and propose payments to those creditors as follows:

| CLASS | DESCRIPTION | AMOUNT TO BE PAID |
|---|---|---|
| 1 | Tenants | 90% of allowed claims |
| 2 | Unsecured claims less than $100. | 90% of allowed claims |
| 3 | Unsecured claims more than $100 except FNB | 75% of allowed claims |
| 4 | Unsecured claims of FNB | 10% equity interest in each debtor. |

FNB objects to both the classification and the treatment of each class and has sought relief from the automatic stay under § 362(d)(2) alleging that reorganization under this plan is not possible.

*Discussion*

These cases are typical single asset real estate cases. Yet, in this case, this Court must determine whether *any similar case* can ever succeed under Chapter 11 over the objection of the primary unsecured creditor —the lien holder claiming a deficiency.

The problem should be obvious. If "creative" classification and impairment are prohibited, it becomes almost impossible for debtors like these to propose a plan which can be confirmed under §§ 1129(a) & (b). If a plan is to be confirmed, either all creditors must consent and the court must find that all of the other requirements of § 1129(a) have been met; or alternatively, if the case is to go to "cram-down" under 1129(b), at least one impaired class (not counting the votes of insiders) must accept the plan, § 1129(a)(10), after which the relevant standards of § 1129(a) and (b) must also be met.

In cases like these, if all unsecured creditors are lumped together, the deficiency claim of the undersecured lender will dominate the vote and the chance of finding another class not composed of insiders that is impaired is almost impossible.

These cases reflect the typical debt structure of single-asset cases:

| DEBTOR | CLASS 1 (Tenants) | CLASS 2 (less than $100) | CLASS 3 (more than $100 except FNB) | CLASS 5[2] (FNB deficiency) |
|---|---|---|---|---|
| APPLERIDGE | $2,134.00 | $ 515.23 | $23,730.51 | $5,525,077.39 |
| MEADOWGLEN | 1,250.00 | 846.84 | 7,733.41 | 6,123.858.27 |
| THOUSAND OAKS | 850.00 | 750.58 | 8,740.10 | 5,468,334.05 |
| | $4,234.00 | 2,112.65 | 44,204.02 | 17,117,269.71 |

Other than administrative claims, claims of general and limited partners (insiders

---

1. Meadow Glen—$15,873,858.27; Appleridge—$14,125,077.39; and Thousand Oaks—$10,468,-333.90.

2. The deficiencies are based upon the Debtors' appraisals. FNB's appraisal would purport to show a small deficiency—only $13,567,269.71.

and equity security interest holders), and tax claims entitled to priority or secured treatment, there are no other creditors. This is typical of such cases.

This is limited stuff with which to work. From this group of creditors, the debtor must—at the very least—create one class that is impaired that will accept the plan without counting the votes of insiders.

### Classification

Creating classes—even "creative" creation of classes—is both simple and (usually) lawful. In these particular cases, the objections of FNB to "classification" as such are probably not well taken.

■ Classification of classes is governed by § 1122:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

Courts have usually read the two sections together, often quite narrowly, holding that "Congress intended all unsecured claims of a similar nature to be grouped within one class unless a separate classification is established under § 1122(b)." *See e.g., In re Trail's End Lodge*, 54 B.R. 898, 903 (B.Ct.Vt.1985). *In re Fantastic Homes*, 44 B.R. 999, 1000 (M.D.Fla.1984).

These restrictive cases are probably incorrect. In an exhaustive opinion, Judge Frank Conrad of Vermont, sitting by designation, has thoroughly examined the issue of classification. *In re AG Consultants Grain Division, Inc.*, 77 B.R. 665, 670–76 (Bankr.N.D.Ind.1987). Judge Conrad has carefully distinguished the issue of classification under § 1122 and the issues of good

faith or discrimination under § 1129(a) and (b), holding first that § 1122 is not ambiguous:

Section 1122 allows a claim or interest to be placed in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. It does not require that similar classes be grouped together but merely that any group be homogenous.

*Id.* at 674 (citations omitted).

Looking to the legislative history of § 1122, Judge Conrad does comment that there may be confusion about this issue—if the statute is ambiguous, which it is not—because § 1122 purported to be a codification of existing case law.[3] Pre-code case law was certainly inconsistent, but Judge Conrad concludes that the case law would, at best, indicate that classifications would be questioned only if the classification scheme was not in the best interest of creditors; violated the absolute priority rule; or uselessly increased the number of classes. *Id.* at 672–74.

After reviewing the statutory language and its history, Judge Conrad reviewed cases under the Code, concluding that cases critical of particular classification schemes actually involved discriminatory treatment or something similar. *Id.* at 676. Judge Conrad's conclusions are straightforward:

"[A] plan proponent under § 1122:

(1) may have the flexibility to place claims of a similar nature in different classes; and

(2) may not place claims of a dissimilar nature in the same class." *Id.*

Enough said. The real issue in this case is one of fairness. Here, the plan proponent has structured the classes within § 1122. But, it has not demonstrated that the treatment of the four classes is fair nor has it demonstrated that the impairment of the three small classes is "in good faith."

Circuit level support for Judge Conrad's analysis can be found at *In re U.S. Truck*

---

**3.** *Id.* at 671–72; S.Rep. No. 95–989, 95th Cong., 2nd Sess. 118 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

*Co., Inc.*, 800 F.2d 581, 584–587 (6th Cir. 1986) and *In re Jersey City Medical Center*, 817 F.2d 1055, 1061 (3rd Cir.1987). Both courts concluded that "similar claims [may be grouped] in different classes." *Id.*, citing *In re U.S. Truck Co., Inc.*, 800 F.2d at 587. The test is one of "reasonableness." *Id.*

Both Circuits recognize the problem of "creation" of impaired classes where the debtor seeks "out a few impaired creditors (or even one such creditor) who will vote for the plan and placing them in their own class." *Id.*, quoting *In re U.S. Truck Co., Inc.*, 800 F.2d at 586.

Like Judge Conrad, *In re AG Consultants Grain Division, Inc.*, 77 B.R. at 676, the circuit courts point out that "created" classes should be scrutinized to prevent abuse. *In re U.S. Truck Co., Inc.*, 800 F.2d at 586. *See also Hanson v. First Bank, (In re Hanson)*, 828 F.2d 1310, 1313 (8th Cir.1987). As the Sixth Circuit notes, other classes continue to be protected by the provisions of § 1129(a) and (b), and "particularly [by] the requirements of subsection (b) that the plan not discriminate unfairly and that it be fair and equitable...." *In re U.S. Truck Co., Inc.*, 800 F.2d at 587.

Analysis of the case law, then, leads to the conclusion that classification of similar claims in separate · classes is permissible but that the treatment of the separate claims must be fair and equitable, non-discriminatory, and, perhaps, in "good faith." In other words, creation of the separate class is not an abuse of classification system.

Once a class is created, impairment of the class is a different issue. The Fifth Circuit opinion, *In re Sun Country Development Inc.*, 764 F.2d 406, 408 (5th Cir. 1985), deals directly with that problem. *Sun Country* involved only two classes: unsecured creditors and a secured creditor. In the original version of the plan, the unsecured creditors were not impaired. The plan was amended to "impair the unsecured creditors, and the secured creditor argued that the other class had been "impaired only so that they could approve the plan and effectuate the cram down." This said, the creditors urged the court to find that the plan had not been proposed "in good faith" under § 1129(a)(3). *Id.*

The Fifth Circuit analysis is limited to § 1129(a)(3) and is somewhat contradictory. First, the circuit panel seems to say that the "good faith" analysis is very limited: "Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement ... is satisfied." *Id.* (citations omitted). Changing the status of the unsecured creditors to effectuate the cram down does not go to whether the purpose of Sun Country's proposed plan is to reorganize or whether the plan has a reasonable hope of success. "Congress made the cram down available to debtors; use of it to carry out a reorganization cannot be bad faith." *Id.*

However, the circuit panel went on to write as follows:

> Second even if [the creditor's] argument went to the issue of good faith, the district court, after a hearing, found that the status of the unsecured creditors was changed because Sun Country's cash flow was insufficient to pay off the debts [to the unsecured creditors] at the initiation of the plan. Therefore, the change ... was necessary.

*Id.*

The Fifth Circuit *dicta*, then, implies that, in a case where no impairment is necessary, "impairment" itself—as contrasted with classification—might be a bar to the plan. In a series of opinions arising in New York, these combined issues have been addressed. *See In re Northeast Dairy Cooperative Federation, Inc.*, 73 B.R. 239 (Bankr.N.D.N.Y.1987); *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106 (Bankr.S.D.N.Y.1983), *rev'd on other gds.*, 39 B.R. 654 (S.D.N.Y.1984); *In re Pine Lake Village Apartment Co.*, 19 B.R. 819 (Bankr.S.D.N.Y.1982).

Both *Mastercraft* and *Pine Lake* turn in large part upon the issue of classification, holding primarily that similar claims may not be separately classified. *See In re Mastercraft Record Plating, Inc.*, 32 B.R.

at 108; *In re Pine Lake Village Apartment, Co.*, 19 B.R. at 531. As discussed above, this court declines to adopt that view of § 1122.

■ Still, the original case, *Pine Lake*, and the more recent case, *Northeast Dairy Co-op Federation, Inc.*, 73 B.R. 239, do raise issues of fairness and equity. The *Pine Lake* court dealt specifically with the type of classification used in the three cases considered in this opinion:

> The creation of separate classes of unsecured and unsubordinated claims in order to allow gamesmanship in vote getting is not condoned under the Code. Indeed, a deficiency claim arising out of a secured interest in property is expressly treated as a recourse claim in 11 U.S.C. § 1111(b), even though the claim may be nonrecourse by agreement or applicable law. The recognition of the deficiency claim as entitled to the same treatment as all other unsecured claims under a debtor's plan would be undermined if debtors were permitted to classify separately such deficiency claims. The debtor may not ignore the rejection of its plan by the holder of a large unsecured deficiency claim simply because the debtor designated a specially preferred separate class of easily created trade creditors whose acceptances may be readily obtainable by offering them more than the disfavored deficiency claim holder. Manifestly such treatment of unsecured claims is unfairly discriminatory within the meaning of 11 U.S.C. § 1129(b)(1).

*In re Pine Lake Village Apartment Co.*, 19 B.R. at 831. In *Northeast Dairy Co-op*, the court addressed identical concerns. 73 B.R. at 250.

Clearly, this plan and its confirmation scheme fail the test of discrimination. *Northeast Dairy Co-op*, in *dicta*, also addressed an issue of concern in this case. Recall that the three plans propose to pay three classes of unsecured claims fairly large dividends. One of those classes consists of unsecured creditors other than the deficiency claim, and that class will receive a distribution of 75%. The deficiency claim will receive equity in the complex (equity which does not presently exist). Of course, the deficiency is an unsecured claim. *See e.g., Hanson v. First Bank*, 828 F.2d at 1313.

■ Paying a higher dividend to a class of equal dignity may well violate the provisions of § 1129(b)(1) which requires that the plan be "fair and equitable." Section 1129(b)(2)(B)(ii) defines fairness and equity to include the absolute priority rule—*i.e.*, that no junior class receive a distribution before a dissenting senior class receives a distribution in full at present value.

Here, the classes are not senior and junior as a matter of law but senior and junior under the plan. Outside of bankruptcy, as against the debtor entities, the deficiency and ordinary unsecured claims would ordinarily be on an equal footing.

The issue is complicated in this case because, outside of bankruptcy the deficiency is non-recourse debt while inside of bankruptcy, under § 1111(b), the deficiency has become recourse debt.

The § 1111(b) right, in this context, has been addressed by the *Pine Lake* court, which held that:

> "[t]he recognition of the deficiency claim as entitled to the same treatment as all other unsecured claims under a debtor's plan would be undermined if debtors were permitted to classify separately such deficiency claim."

*In re Pine Lake Village Apartment Co.*, 19 B.R. at 831, quoted in full *supra*.

As the quote suggests, Congress enacted § 1111(b) to give non-recourse debt a voice in the chapter 11 process. It may elect to be treated as recourse debt (*i.e.*, unsecured debt) or as fully secured. In either event, the creditor with non-recourse debt becomes a powerful force in the case. *See* 5 *Collier on Bankruptcy* ¶ 1111.02 (15th ed. 1987). The purpose of the allowance at § 1111(b) of an unsecured claim is to allow the undersecured creditor a right to potentially dominate the vote within the unsecured class. *Id.* at ¶ 1111.02[2].

■ When the general unsecured and deficiency claims are split, the policy behind

§ 1111(b) is violated, for the voice given the deficiency is taken away.

■ Considering, therefore, the policy behind § 1111(b), it would seem that the two types of claims must be treated equally unless there are valid reasons to do otherwise. Therefore, the proposed plan cannot be confirmed for it is not fair and equitable.

■ Finally, the resolution of the *Sun Country dicta* problem remains. *Sun Country* quite properly limited the issue of "good faith" to be the issue of "reorganizability." *In re Sun Country Development Co.,* 764 F.2d at 408. The *dicta,* however, concerning the necessity for impairment, brings into focus here the "unfairness" or "discrimination" or "abuse" discussed earlier. In this case, there is no need to "impair" any of the creditors separately classified from the deficiency. The savings are negligible. The act of impairment—not classification itself—is the abuse. Following instructions of *In re U.S. Truck Co., Inc.,* 800 F.2d at 586, this Court will decline to allow this abuse.

At this point it is clear that a plan with this type of classification scheme must be denied and further that the stay should be lifted. These debtors have no equity and cannot, over the objections of the deficiency claims of the primary lender, confirm a plan. This means that no effective reorganization is possible. *See In re Anderson Oaks, Ltd.,* 77 B.R. 108 (Bankr.W.D.Tex. 1987).

The motions of the lender, FNB are granted under Rule 3013 and § 362(d)(2). Counsel for FNB shall prepare appropriate orders.