In re WILLOWS CONVALESCENT
CENTERS LIMITED PART-
NERSHIP, Debtor.

WILLOWS CONVALESCENT CENTERS
LIMITED PARTNERSHIP,
Appellant,

v.

UNUM LIFE INSURANCE COMPANY
and State of Minnesota Department
of Human Services, Appellees.

Nos. 4–90 BKY 6496, 3–91 CIV 484.

United States District Court,
D. Minnesota,
Third Division.

Oct. 18, 1991.

Rosanne H. Wirth, Lindquist & Vennum, Mpls., MN, for appellant.

Mark James Kalla, Oppenheimer Wolff & Donnelly, Mpls., MN, for appellee Unum Life Ins. Co.

Julie Kay Harris, MN Atty. Gen., St. Paul, MN, for appellee State of Minn., Dept. of Human Serv.

Wesley B. Huisinga, Mpls., MN, U.S. Trustee.

### ORDER

ALSOP, Chief Judge.

The above entitled matter comes before the court on appeal from the United States Bankruptcy Court for the District of Minnesota. Debtor Willows Convalescent Centers Limited Partnership appeals the June 4, 1991 order of the Honorable Robert J. Kressel denying confirmation of the debtor's Chapter 11 plan of reorganization.

For the reasons set forth below, the order denying confirmation will be affirmed.

## I. FACTUAL BACKGROUND

The debtor, a Minnesota limited partnership, owns two nursing homes, Willows Central and Willows South in Minneapolis, Minnesota and Richfield, Minnesota respectively.

Following an eight-month period of unsuccessful negotiations between the debtor and its largest creditor, UNUM Life Insurance Company ("UNUM") concerning the debtor's debt to UNUM, the debtor agreed on September 19, 1989 to the appointment of Walker Management to manage the two facilities as receiver for UNUM. The debtor filed a voluntary Chapter 11 petition on November 14, 1990, Bankruptcy No. 4–90–6496. On or about December 28, 1990, UNUM filed a motion for relief from the automatic stay in the bankruptcy court. The debtor opposed that motion and the court entered an order on January 23, 1991 which provided that UNUM's motion for relief from the automatic stay filed by UNUM would be denied conditioned on the debtor's filing a plan and disclosure statement on or before February 15, 1991, and the debtor obtaining confirmation of the plan on or before May 16, 1991. The debtor filed a plan and disclosure statement before February 15, 1991, and an order was entered on April 25, 1991 approving the disclosure statement and scheduling the matter for confirmation hearing. An order was also entered on April 26, 1991 amending the January 17, 1991 order and extending the time in which the debtor must obtain confirmation of its plan through and including June 17, 1991.

Debtor's two largest creditors are UNUM, which filed a proof of claim in the amount of approximately 6.1 million dollars, and the State of Minnesota Department of Human Services ("DHS"), which asserts a claim of approximately 4.6 million dollars. The claims of UNUM and DHS are by far and away greater than that of any other creditor. Under debtor's amended plan of reorganization ("Plan"), UNUM's claim is placed in two classes, Class 2B, a secured class consisting only of UNUM, and Class 3B, the class of general unsecured creditors, both of which are deemed impaired under the Plan. DHS's claim is also placed in two classes. Class 2C, deemed unimpaired, and Class 3B, the class of general unsecured creditors. Debtor's Plan designates two other "impaired classes," excluding insiders. Class 2A consists only of the secured claim of Copy Duplicating Products, Inc. ("CDP") in the amount of approximately $1,400. The second is Class 3A, the so-called administrative convenience class, consisting of unsecured claims against the debtor for $200 or less or claims for a larger amount which are reduced at the election of the holder thereof to $200.

Both UNUM and DHS filed objections to confirmation of the debtor's Plan, and also timely filed ballots on May 24, 1991 rejecting the Plan. UNUM and DHS each also filed proofs of claims. UNUM filed its proof of claim on the day of the hearing, June 3, 1991. There is a factual dispute as to when DHS filed its proof of claim. The proof of claim was stamped as received by the Clerk's Office twice, one stamp showing May 24, 1991 and the other showing May 28, 1991. The court need not resolve this factual dispute in order to resolve this appeal. Class 2A (CDP) voted to accept the Plan. Class 3A, the administrative convenience class, also voted to accept the Plan.

At the confirmation hearing on June 3, 1991, Judge Kressel determined that the Plan was deficient for a number of reasons. An order was entered on June 4, 1991 denying confirmation of the debtor/appellant's Plan dated April 24, 1991.

Debtor raises seven issues on this appeal, attacking each of the grounds cited by Judge Kressel in denying confirmation of the Plan. The court's resolution of two of the issues raised by debtor renders consideration of the remaining issues unnecessary.

## II. ANALYSIS

### A. *Validity of UNUM and DHS Ballots*

Debtor contends that the bankruptcy court erred in treating as valid the ballots of UNUM and DHS, both rejecting the

Plan, in determining acceptance or rejection of the debtor's Plan under 11 U.S.C. § 1129. Even though the ballots were timely filed, debtor contends that the ballots should not have been counted because, as of the deadline for filing ballots, neither UNUM nor DHS were eligible to vote on the Plan under the terms of 11 U.S.C. § 1126. Debtor reasons that under section 1126, only holders of "allowed" claims are entitled to vote. Because the claims of both UNUM and DHS were listed by debtor as disputed, those claims cannot be deemed allowed until a proof of claim is filed. 11 U.S.C. § 502. UNUM, and possibly DHS, did not file a proof of claim until after the deadline for filing ballots had passed. Accordingly, debtor argues, their ballots cannot be counted because they were not cast by the holder of an allowed claim.

■ While logical on its face, debtor's argument confuses the deadline for filing ballots with the deadline for filing proofs of claims. Bankruptcy Rule 3003(c)(3) grants the bankruptcy court discretion to fix the deadline for filing proofs of claims. Bankruptcy Rule 3017(c) grants the bankruptcy court discretion to fix the deadline for filing ballots to accept or reject the Plan. In this case, the bankruptcy court issued an order dated April 25, 1991 establishing the deadlines for filing proofs of claims and for filing ballots. As to proofs of claims, that order provided "subject to Local Rule 124, the date a plan is confirmed is the last day to timely file a proof of claim in this case." [1] As to the deadline for ballots, the order provided that "five days prior to [the confirmation] hearing is fixed as the last day to timely file" ballots. Both UNUM and DHS complied with the terms of this order. Thus, as of the date of the confirmation hearing, both UNUM and DHS had timely filed both a ballot and a proof of claim. At that time, therefore, they were holders of allowed claims who had voted to reject the Plan. Under these circumstances, it was not error for the

bankruptcy court to consider UNUM and DHS eligible to vote, and to treat their ballots as valid.

**B. Compliance with 11 U.S.C. § 1129(10)**

11 U.S.C. § 1129(a)(10) is a key provision which must be satisfied in order to complete a so-called "cramdown" of a plan of reorganization under Chapter 11. Under section 1129(a)(10), a debtor's plan cannot be confirmed unless at least one "impaired class" accepts the plan, excluding acceptance by any insider.

Debtor contends that three impaired classes accepted the Plan. First, debtor argues that Class 3B, the general unsecured creditors, accepted the Plan. This class includes the claims of UNUM and DHS to the extent that they are unsecured. Debtor's contention that this class accepted the Plan rests on the presumption that the ballots of UNUM and DHS were invalid. The court has determined that their ballots were properly considered valid by the bankruptcy court. If the ballots of UNUM and DHS are counted, Class 3B clearly rejects the Plan.

Debtor cites two other classes designated as impaired classes under its Plan which voted to accept the Plan. The first is Class 2A, consisting only of the secured claim of CDP in the amount of approximately $1,400. The second is Class 3A, the so-called administrative convenience class.

It is undisputed that these classes voted to accept the Plan. The issue on appeal is whether either of these classes are legitimate "impaired classes" whose acceptance can satisfy 11 U.S.C. § 1129(a)(10). The bankruptcy court found that they are not, concluding that these classes were created and deemed impaired "for no reason that is apparent to me other than to create an impaired class to accept [the debtor's] plan." Transcript of Hearing on Confirmation of Plan, at p. 45.

■ The law is clear that a debtor may not manufacture impaired classes merely for the purpose of garnering votes of such classes in favor of its plan. *Hanson v.*

---

**1.** Debtor argues this language should be construed as setting a deadline for filing proofs of claims *for distribution purposes only,* but not for

the purpose of voting on the Plan. The language of the order cannot bear such a limitation.

*First Bank of South Dakota,* 828 F.2d 1310, 1313 (8th Cir.1987). Some courts have suggested that plans including such manufactured classes should be rejected as proposed in bad faith under 11 U.S.C. § 1129(a)(3), *see In re Sandy Ridge Development Corp.,* 881 F.2d 1346, 1353 (5th Cir.1989), while other courts have held that such classes cannot be used to achieve compliance with section 1129(a)(10). *See In re Lettick Typografic, Inc.,* 103 B.R. 32, 39 (Bankr.D.Conn.1989). Whichever theory is used, the principal is the same. A debtor must not be allowed to abuse the classification and/or impairment system of the bankruptcy code for the sole purpose of achieving a cramdown. *In re Meadow Glen, Ltd.,* 87 B.R. 421, 424–427 (Bankr.W.D.Tex. 1988).

### 1. CDP Class

As stated earlier, Class 2A consists only of the secured claim of CDP for about $1,400. The Plan provides for the following treatment with respect to CDP's claim:

> CDP shall receive on account of its Class 2A Claim continued monthly payments in accordance with the terms and conditions of the underlying instrument. All pre-petition defaults shall be cured by adding to the end of the term set forth in the underlying instrument, and paid at the rate of $291.22 per month until CDP's Class 2A Claim is paid in full.

Debtor defends this class on the grounds that it meets the technical requirements of an impaired class under the Bankruptcy Code. First, debtor contends that under 11 U.S.C. § 1122(a), debtor was required to place the claim of CDP in a class separate from the claims of its other creditors. And because debtor has technically defaulted on its contract with CDP, and CDP's claim is not to be paid in full on the effective date of the Plan, the claim of CDP is technically impaired under 11 U.S.C. § 1124.

Debtor's argument is correct so far as it goes. The CDP claim cannot be placed in the same class as the claims of UNUM or DHS. As debtor has chosen to treat the CDP claim, it is technically impaired. This does not end the inquiry, however. If the bankruptcy court reasonably concluded that the sole reason for debtor's decision not to pay CDP's claim in full on or before the effective date of the Plan was to create an impaired class which would vote in favor of the Plan, then the bankruptcy court properly disregarded this class in determining whether section 1129(a)(10) was satisfied in this case.

■ The question of the debtor's good faith or purpose in proposing a given classification is in the nature of a finding of fact subject to review under the clearly erroneous standard in this court. *See Hanson,* 828 F.2d at 1312, 1313 (reviewing bankruptcy court's ruling on motion for reclassification of claims under clearly erroneous standard). Here the bankruptcy court's conclusion is well-supported in the record and is not clearly erroneous. In relation to the combined claims of UNUM and DHS in excess of 10 million dollars, CDP's claim of approximately $1,400 is, by any understanding of the term, *de minimis.* The debtor can identify no reason why the $1,400 claim could not be paid as of the effective date of the Plan. The savings to the debtor in paying the CDP claim in full through monthly installments, as opposed to a single payment, is negligible. Because the record reveals no plausible reason for impairing the CDP claim other than to create an impaired class to accept the Plan, the bankruptcy court's conclusion cannot be regarded as clearly erroneous. *Cf. In re Meadow Glen, Ltd.,* 87 B.R. at 427 (denying confirmation of plan because the act of impairment of class was unnecessary and abusive).

### 2. Administrative Convenience Class

■ Like the CDP class, the administrative convenience class does appear to be technically impaired under section 1124. All creditors in this class will be paid their $200; however, payment may not occur until 30 days after the effective date of the Plan. It is not a class, however, whose acceptance of the Plan satisfies the requirement of section 1129(a)(10). The purpose of section 1129(a)(10) is to provide some indicia of support by affected creditors and prevent confirmation where such support is lacking. *See In re Lettick Typografic,*

*Inc.*, 103 B.R. 32, 38 (Bankr.D.Conn.1989), and cases cited therein. Acceptance by this administrative convenience class gives no indication of support by affected creditors, as all creditors within this class will be paid in full within 30 days of the effective date of the Plan.

In *In re Lettick Typografic*, the debtor attempted to achieve compliance with section 1129(a)(10) by creating a class whose creditor was to be paid in full two weeks after the effective date of the Plan. The court refused to honor this attempt, stating, "While the debtor may have achieved literal compliance with section 1129(a)(10), this engineered impairment so distorts the meaning and purpose of that subsection that to permit it would reduce (a)(10) to a nullity." *Id.* at 39. The same is true in this case. Accordingly, the bankruptcy court's refusal to find compliance with section 1129(a)(10) based upon the vote of the administrative convenience class was not error.

█ A plan of reorganization cannot be confirmed without compliance with section 1129(a)(10). The bankruptcy court did not err in concluding that section 1129(a)(10) was not satisfied in this case. Accordingly, the bankruptcy court's June 4, 1991 order denying confirmation of debtor's plan is hereby AFFIRMED.