**In re NORTH VERMONT ASSOCIATES, L.P., Debtor.**

**Bankruptcy No. 93–01068.**

United States Bankruptcy Court, District of Columbia.

Feb. 23, 1994.

Stephanie Wickouski, Reed, Smith, Shaw & McClay, Washington, DC, for debtor.

Duane D. Morse, Wilmer, Cutler & Pickering, Washington, DC, for Oliver Carr Co.

J. Douglas Baldridge, Rudnick & Wolfe, Washington, DC, for Potomac Equity Portfolio Ltd. Partnership.

*DECISION RE MOTION TO DISMISS*

S. MARTIN TEEL, Jr., Bankruptcy Judge.

This is a case in which the debtor proposes a plan that gives mortgaged property to a mortgagee in satisfaction of its allowed secured claim and proposes that any unsecured portion of the mortgagee's claim be paid by the guarantors of the claim (subject to the limitations of their guarantees). The court concludes, on the unique facts of this case, that the case was filed in bad faith. The court will grant the mortgagee's motion to dismiss.

The debtor, North Vermont Associates, L.P., filed its voluntary petition under chapter 11 of the Bankruptcy Code on October 28, 1993, one day before a scheduled foreclosure sale. The debtor filed its Liquidating Plan of Reorganization on November 3, 1993, and filed minor revisions to that plan on December 29, 1993.

The debtor's assets consist of: real property securing the claims of the mortgagee, Potomac Equity Portfolio Limited Partnership; $40,800 in cash (after payment to debtor's bankruptcy counsel of a $30,000 retainer to handle this case); and approximately $3,500 in accounts receivables.

The debtor's liabilities consist of: $18,143,-815.09, with interest accruing at the per diem rate of $2,817.36 after July 15, 1993, owed to the mortgagee; $158,500.00 owed to Arlington County, Virginia in secured, first-priority real estate taxes; and $10,000.00 owed to general unsecured creditors (not including a disputed commission claim of S.G. Gerachis Company). The Gerachis claim was scheduled as a disputed and unliquidated claim of an unknown amount. When the petition was filed, the debtor thought Gerachis would assert a claim of $38,000. After the petition was filed, Gerachis filed a claim against the debtor's general partner on the debt for more than $175,000. The debtor continues to dispute the entire claim.

The debtor's sole general (and managing) partner is the Oliver Carr Company ("OCCO"). Clark Enterprises, Inc. ("CEI"), a limited partner of the debtor, is liable to the mortgagee on a guaranty given with re-

gard to a loan of $2.5 million (one of three loans leading to the $18,143,814.09 mortgage debt), under which CEI agreed to guarantee payment of the principal due and attorneys fees, interest, and other charges. Oliver T. Carr, Jr., a limited partner of the debtor, granted the mortgagee a deficiency guaranty, capped at $2 million, for any deficiency that the mortgagee might suffer, after CEI's payment on its guaranty. The mortgagee released OCCO from liability on the mortgage loans but OCCO collateralized the deficiency guaranty in return. The debtor's limited partners (there are three besides CEI and Carr) and OCCO have entered into an agreement for indemnification of CEI in the event that its guaranty is called upon.

The debtor's only significant asset is the real property, an assemblage of five parcels of land in the Ballston area of Arlington County, Virginia. The property was acquired for redevelopment as two office and two residential buildings. Four of the five parcels have small, older buildings on them; currently only one of the four parcels is under lease, to month-to-month tenants, generating $4,400 per month in rents, an amount insufficient to cover even two days of interest on the mortgagee's claim. The debtor completed preliminary design work and environmental testing on the property. However, unable to find any definite prospective tenants for the property, the debtor has decided that it is economically too speculative to continue development efforts. Besides, the debtor could not proceed with redevelopment in the face of the mortgagee's refusal to extend the acquisition loans. The debtor has no employees except for its principals.

The debtor filed an adversary proceeding to enjoin the mortgagee's proceeding against the guarantors. Because the court determined that no harm could befall the debtor prior to entry of a judgment against the guarantors, the court simply enjoined collection for 10 days (by agreement of the mortgagee) after entry of any judgment against a guarantor. No judgment has yet been entered against either guarantor.

Under the plan (as revised) the mortgagee's claims will be dealt with as follows. First, the mortgagee's allowed secured claim shall be fixed by the court's valuation of the collateral. The allowed secured claim shall then be satisfied by the transfer of the collateral securing the claim (either by a transfer of title by special warranty deed or, at the mortgagee's option, by exercising the right to foreclose on the property). If the mortgagee exercises the option of foreclosure, the court's valuation nevertheless fixes the amount of its allowed secured claim and the allowed secured claim is deemed paid in full regardless of the price paid for the property at foreclosure.

The court's valuation of the property is to be used as well to fix the amount of the mortgagee's unsecured deficiency claim and "the maximum liability of CEI under the CEI Guaranty and of the Deficiency Guarantor under the Deficiency Guaranty." Revised Plan at par. 5.01. The mortgagee's unsecured deficiency claim—the difference between the mortgagee's total allowed claim and the fair market value of the property—is to be satisfied by the payment of the amount owed under CEI's guaranty and by issuance of a note by Carr for any amount owed under Carr's deficiency guaranty. CEI's payment under the plan is to constitute full satisfaction of its obligations under the CEI guaranty; the valuation will also fix the maximum amount for which Carr is required to issue a promissory note for the deficiency guaranty (capped by the guaranty's terms at $2 million).

The debtor's plan proposes that non-lien holding general unsecured creditors will receive a distribution out of funds left after payment of claims entitled to priority under 11 U.S.C. § 507. In addition, they may elect to release the general partner, OCCO, and receive a distribution out of a maximum of $8,000 that OCCO will deposit with the debtor. Their distributions are to occur 30 days after the effective date of the plan.

On these facts, the court makes the ultimate finding that the plan was filed in bad faith. The debtor held sufficient funds on hand, $40,000, to pay in full all undisputed unsecured claims, other than whatever unsecured claim the mortgagee may have after foreclosure. The mortgagee has no apparent interest in pursuing a bankruptcy case

against the debtor, even upon payment of the other unsecured creditors. The mortgagee already has a right to pursue the guarantors to recover any amount it does not recover through foreclosure and there is no evidence that those guarantees will not suffice to make it whole. Upon their being paid, the undisputed unsecured claims of $10,000 would have no basis for pursuing an involuntary case against the debtor. The holder of the disputed unsecured claim could not pursue an involuntary case on its own as long as its claim remains the subject of a bona fide dispute. Moreover, had the debtor not paid its bankruptcy counsel $30,000 the day before the petition was filed, the debtor would have had on hand enough funds to pay the $38,000 it thought was the maximum that would be sought by the disputed claim's holder. The tax creditor would be unaffected by a foreclosure sale and hence was in no need of a bankruptcy filing to protect its interests. The limited partners' interests are to be cancelled under the plan so it is clear that the case was not filed to protect the limited partner interests.

In short, this was a bankruptcy case that need not have been filed other than to serve the needs of the guarantors and of their indemnitors (who happen to be limited partners). The debtor concedes that it is improper for a debtor to file a bankruptcy petition that does not, in fact, seek the court's assistance and protection for the debtor, but rather for a guarantor. Because I find that the case here was filed to protect the guarantors and their indemnitors, I must conclude that it was filed for an improper purpose.

The debtor pays lip service to proper purposes for filing a bankruptcy case. It urges that if the case is dismissed, the mortgagee will undoubtedly foreclose on the property, bid in at an artificially low price, and hold a deficiency claim against the debtor's estate that will wipe out the assets the plan intends for the general unsecured creditors.

Had the debtor allowed foreclosure to proceed and a mortgagee deficiency claim had resulted, the other unsecured creditors would have been adequately protected by a subsequent chapter 7 filing. OCCO, the sole general partner, has been released from liability on the debt owed the mortgagee. Accordingly, a chapter 7 trustee would be able to make recovery on behalf of the non-lien holding general unsecured creditors from OCCO pursuant to 11 U.S.C. § 723(a)[1] and the mortgagee would properly be precluded from sharing in any such recovery. There is no suggestion that if there were a deficiency in estate assets to pay the $10,000 in undisputed general unsecured claims, OCCO would be unable to pay a chapter 7 trustee $10,000 pursuant to a recovery under § 723(a). The debtor's disclosure statement is silent in this regard; it only urges that if this case were dismissed each unsecured creditor, outside bankruptcy, would be faced with the prospect of foregoing any collection if such creditor decided that the costs of collection were not merited in light of the size of the claim of the creditor. The only reasonable inference from the debtor's silence is that OCCO has the ability to make full payment but that the debtor has proposed a plan providing for less than full payment in order to assure that there is an accepting impaired class in the case as required by 11 U.S.C. § 1129(a)(10).

Even disregarding OCCO's lack of liability to the mortgagee, the debtor's professed concern for general unsecured creditors is a charade. The debtor has had on hand sufficient funds to pay the $10,000 in undisputed general unsecured claims and has spent triple the amount of those claims on a retainer for attorney fees for the prosecution of this chapter 11 case. More is being spent on litigating this case than the minimal $10,000 in claims of those creditors. Had the debtor simply paid such debts, it is extremely unlikely that the mortgagee would have pursued a single-creditor involuntary petition against the debtor in order that a trustee could pursue $10,000 in preference claims

---

1. 11 U.S.C. § 723(a) provides:

    If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of such deficiency.

under 11 U.S.C. § 547. The mortgagee has direct rights against the guarantors. We know that CEI is good for its guarantee because the debtor represents that CEI will pay up to the maximum amount of its guarantee. Similarly, the debtor represents that Carr, the deficiency guarantor, will satisfy any deficiency determined under the plan to the extent of his guarantee (capped at $2 million). The debtor, who is in the midst of obtaining an appraisal, states that it anticipates that the appraisal will show that the current market value of the collateral equals or exceeds the amount of the mortgagee's claims. The debtor has not suggested why the mortgagee would be in need of filing a chapter 7 involuntary petition to pursue $10,000 in preference claims. The prospect of the mortgagee doing so is so speculative that the possibility forms no reasonable basis for filing a chapter 11 liquidating case in order to protect the undisputed general unsecured claims of non-lien creditors.

The debtor next urges that the case is being filed to protect the limited partners because they may be called upon to indemnify the guarantors if the guarantees are enforced for an inflated mortgagee deficiency claim. But the limited partners' stake in that regard is not as limited partners; it is an indemnitors. They are really in no better posture than the guarantors whom they have agreed to indemnify. Moreover, even if the estate's property had value that could be realized for the limited partners, § 1129(a)(10) evidences that their acceptance of a plan alone would not suffice to make the plan confirmable and deprive the mortgagee of its state law remedies. Two-party disputes (where the two sides are a single creditor on one side and the debtor, its management and owners on the other) are not appropriate vehicles for invoking the Bankruptcy Code's chapter 11 provisions.

Under the label of a requirement of good faith, the bankruptcy courts have scrutinized bankruptcy filings and dismissed those filed for invalid purposes. *In re Franklin Mortgage & Investment Co., Inc.,* 143 B.R. 295, 298 (Bankr.D.D.C.1992). This court has looked to the Bankruptcy Code and its purposes in determining whether a debtor has proceeded in good faith. *In re Heron, Burchette, Ruckert & Rothwell,* 148 B.R. 660, 673 (Bankr.D.D.C.1992). Unlike *Heron, Burchette,* this debtor's filing does not advance the purposes of the Bankruptcy Code. Where, as here, the goal of the filing is to cushion the amount of liabilities under guarantees, that is not a purpose justifying a filing under the Bankruptcy Code. *In re Humble Place Joint Venture,* 936 F.2d 814, 818 (5th Cir.1991) (purpose of cleansing partners of their liabilities as guarantors was impermissible purpose casting doubt on debtor's objective good faith). The debtor, instead of paying its undisputed unsecured claims and not filing a bankruptcy case, has filed a bankruptcy case and artificially impaired those claims by filing a plan that calls for less than full payment. Such artificial impairment may not in good faith be used to achieve the debtor's ulterior purposes. *Humble Place,* 936 F.2d at 818 (debtor had on hand sufficient cash, upon filing petition, to pay non-insider unsecured creditors). *Cf. In re Sandy Ridge Development Corp.,* 881 F.2d 1346, 1353 (5th Cir.), pet. for rehearing denied, 889 F.2d 663 (5th Cir.1989); *In re Windsor on the River Assocs., Ltd.,* 7 F.3d 127, 131–32 (8th Cir.1993) (invalidating plan's alteration of rights arising solely from the debtor's exercise of discretion); *In re Washington Associates,* 147 B.R. 827, 831 (E.D.N.Y.1992) (noting access to funds from debtor's general partners as basis for treating impairment as artificial), *aff'g* 141 B.R. 275, 287 (Bankr.E.D.N.Y.1992); *In re Willows Convalescent Centers Ltd. Partnership,* 151 B.R. 220, 223 (D.Minn.1991) (invalidating impairment undertaken solely to create an impaired class to accept plan). For all of these reasons, the case will be dismissed.