**In re ROSWELL–HANNOVER JOINT VENTURE, Debtor.**

**JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Movant,**

**v.**

**ROSWELL–HANNOVER JOINT VENTURE, Respondent.**

**Bankruptcy No. 92–66631–JB.**

United States Bankruptcy Court, Northern District of Georgia, Atlanta Division.

Dec. 16, 1992.

---

Alfred G. Adams, Jr., S. Perry Thomas, Jr., Sutherland, Asbil & Brennan, Atlanta, GA, for movant.

Otto F. Feil, III, Lisa F. Harper, Vincent, Chorey, Taylor & Feil, Atlanta, GA, for debtor-respondent.

## ORDER

JOYCE BIHARY, Bankruptcy Judge.

The issue in this Chapter 11 single asset real estate case is whether debtor's proposed plan, which places the secured creditor's deficiency claim in a separate class from other unsecured creditors, is unconfirmable. After considering the evidence, argument of counsel and the parties' briefs, the Court concludes that the classification scheme proposed is improper, and the plan is unconfirmable.

The procedural posture and the pertinent facts are as follows. This case is before the Court on a motion for relief from the automatic stay filed by John Hancock Mutual Life Insurance Company ("Hancock"). Debtor is a Georgia joint venture that owns an office complex located in Fulton County, Georgia (the "Project"). Hancock has a claim of approximately $7,280,000.00 secured by the Project. For purposes of

Hancock's motion for relief from stay, the parties have stipulated that the value of the Project is $4,400,000.00. Thus, Hancock has a secured claim of $4,400,000.00 and an unsecured claim of approximately $2,880,000.00. The other unsecured debt totals approximately $52,000.00.

Hancock filed this motion for relief from the stay very early in the case.[1] The initial hearing on Hancock's motion was held on July 1, 1992. Hancock requested relief from the stay under 11 U.S.C. § 362(d)(2) in order to foreclose on the Project, arguing that there was no equity in the Project and there was not a reasonable possibility of a successful reorganization within a reasonable time. The parties consented to a continuation of the hearing on certain conditions in order to determine if there was a reasonable prospect of a reorganization. The conditions included a requirement that debtor file a plan by August 1, 1992, and that on or before August 15, 1992, debtor must raise the greater of $300,000.00 or the amount of cash required for the first six months of the plan. Debtor filed a plan on July 31, 1992 and raised $300,000.00.

At the continued hearing on August 26, 1992, Hancock objected to the plan as proposed and argued that it was unconfirmable on its face. The Court heard argument and testimony from debtor's general partner on August 26, 1992, about the plan filed on July 31, 1992. The Court advised the parties that debtor's plan as filed at that time was unconfirmable, but it appeared that the parties had not had any meaningful negotiations. The Court directed the parties to meet and gave debtor an opportunity to amend its plan to cure the objections raised by Hancock. In order to save costs and attorneys fees, the Court directed debtor to prepare an outline of a plan by September 18, 1992 (rather than another lengthy plan and disclosure statement), and the hearing was continued to September 22, 1992.

At the continued hearing on September 22, 1992, counsel announced that the parties had met and exchanged proposals, but that they were unable to resolve the matter in any fashion. Debtor had complied with the Court's direction and submitted an outline of a revised plan on September 18, 1992. Hancock announced that it opposed that revised plan and argued that the plan was unconfirmable on its face and that the stay should be lifted to permit Hancock to foreclose.

In debtor's revised plan as set forth in the September 18, 1992 outline, debtor classifies both the secured and unsecured portion of Hancock's claim in a separate class, Class II. The proposed treatment is for Hancock to receive a non-recourse note in the face amount of $5,560,000.00 (the "Note") secured by: (1) the first mortgage Hancock currently holds on the Project; and (2) a second mortgage on other real estate owned by principals of the debtor which real estate debtor values at approximately $1,000,000.00. The Note provides for monthly payments of interest only on $4,400,000.00 at a rate of 2% over the prime rate on the effective date of the plan, and the balance will be due seven years after the effective date.

Debtor also proposes to pay Hancock $160,000.00 on or before the effective date from the net operating income of the Project. The remaining $1,000,000.00 under the Note will be paid with annual payments for seven years amortized on an eleven-year basis and with a final additional $400,000.00 payment in seven years. The payment of the $160,000.00 on the effective date plus the payments for the remaining $1,000,000.00 is equivalent to 40% of Hancock's unsecured claim. Finally, Hancock is to receive an interest in the reorganized debtor equivalent to a 20% participation in the net profits generated by way of sale, refinance or otherwise.

Debtor classifies the other unsecured claims in Class III and proposes to pay

---

1. In fact, the motion was filed before an order for relief was entered. The case was commenced as an involuntary case by one of debtor's joint venturers. None of the other partners of the debtor controverted the involuntary petition, and the Court entered an order for relief on June 1, 1992.

them 25% of their allowed claims upon the effective date of the plan.

At the September 22, 1992 hearing, Hancock's counsel argued that the revised plan had a fatal defect in that it placed Hancock's unsecured deficiency claim of $2,880,000.00 in a different class from the other unsecured claims in order to obtain the affirmative vote of an impaired class. Hancock argued that the record here contains no business justification for the separate classification and that debtor is effectively depriving Hancock of its vote on the plan. Hancock presented other objections at the hearing, but the parties agreed that Hancock's objection based on improper classification was a pivotal issue. The Court gave the parties an opportunity to file briefs.

It is appropriate to explain why a ruling on Hancock's objection to debtor's classification of claims is significant at this juncture. The motion before the Court is Hancock's motion for relief from the stay pursuant to § 362(d)(2). Hancock has met its burden of showing that there is no equity in the collateral. The parties have stipulated that there is no equity and that in fact Hancock is presently undersecured in the amount of approximately $2,880,000.00. Section 362(d) requires that the stay be lifted unless debtor can meet its burden of demonstrating that there is an effective reorganization in prospect in this case. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988). Hancock argues that debtor has not met its burden by proposing a plan that, on its face, is unconfirmable.

The plan confirmation statute, 11 U.S.C. § 1129, provides two avenues for confirmation of a plan of reorganization. Section 1129(a) provides for consensual confirmation and requires, among other things, the acceptance of the plan by all impaired classes of claims. 11 U.S.C. § 1129(a)(8). Hancock has already announced that it will not accept debtor's plan and so a consensual confirmation is not possible. The second avenue for confirmation is in § 1129(b), often referred to as the cramdown statute.

Under § 1129(b), a plan can be confirmed over dissenting classes of claims if all the requirements of § 1129(a) are met, excluding the requirement in § 1129(a)(8), and if the plan does not discriminate unfairly and is fair and equitable with respect to each impaired class that has not accepted the plan. One of the requirements in § 1129(a) necessary for a cramdown is in § 1129(a)(10) which provides as follows:

> (10) If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

11 U.S.C. § 1129(a)(10) (1992).

In this case, there are impaired classes of claims and so debtor must have at least one impaired class accept the plan. Acceptance by a class requires that more than one-half in number and at least two-thirds in amount of the claims voting in a class favor the plan. 11 U.S.C. § 1126(c). Hancock's position is that it would not at any time vote in favor of confirming any plan. If Hancock's deficiency claim of $2,880,-000.00 and the unsecured claims of $52,-000.00 must be placed in the same class and Hancock votes against the plan, debtor will not have the vote of an accepting impaired class under § 1129(a)(10) and the plan could not be confirmed. Put another way, if debtor's proposal to classify separately Hancock's deficiency claim and the unsecured claims is not allowed, then debtor has been unable to propose a confirmable plan, and the stay should be lifted to permit Hancock to foreclose.

Debtor argues that there are three justifications for separately classifying Hancock's unsecured claim from the other unsecured claims. First, debtor argues that the nature of the claims is different. Second, debtor argues that the difference in the amounts of the claims (Hancock's claim is $2,880,000.00 and the trade creditors' claims total $52,000.00) justifies separate classification. Third, debtor argues that its proposed plan provides more favorable treatment to Hancock than to the

**1018**

unsecured creditors and that different treatment mandates separate classification.

Hancock argues that separate classification of a mortgagee's unsecured claim from other unsecured debt must be based upon a valid business justification and that the fact that a mortgagee's claim is non-recourse outside of bankruptcy does not justify a separate classification. Hancock further argues that the large amount of Hancock's claim is not a valid justification and that based on the record, the Court should presume that the classification scheme was designed to manipulate the voting process to obtain the acceptance of an impaired class. Hancock contends that the different treatment offered to Hancock and the other unsecured creditors was only done to justify separate classification and thus to manipulate the vote.

Classification of unsecured claims in Chapter 11 cases, particularly in single asset real estate cases, has been the subject of many recent published opinions. The courts have attempted to look at the language of the pertinent provisions of the Bankruptcy Code, the legislative history of those provisions, policy considerations, pre-Code practice in the area of claims classification and the terms of the specific plans before them to arrive at workable rules and guidelines for claims classification.

A starting point for the discussion is 11 U.S.C. § 1122 which provides as follows:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122 (1992).

The parties agree that § 1122(a) says it is impermissible to place dissimilar claims within a single class. The parties also agree that § 1122(a) permits classification of "substantially similar" claims in differ-

ent classes, but the parties disagree on how much latitude a debtor should have in separately classifying similar claims. In discussing § 1122, the Eleventh Circuit has held as follows:

Although the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case, this discretion is not unlimited. "[T]here must be some limit on a debtor's power to classify creditors ... The potential for abuse would be significant otherwise." *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co.,* 800 F.2d 581, 586 (6th Cir.1986); *see also Hanson v. First Bank,* 828 F.2d 1310, 1313 (8th Cir.1987). If the plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed. *Teamsters,* 800 F.2d at 586; *Hanson,* 828 F.2d at 1313.

*In re Holywell Corp.,* 913 F.2d 873, 880 (11th Cir.1990).

Three circuit courts have recently considered whether an unsecured deficiency claim could be classified separately from unsecured trade debt in the context of a single asset real estate case, and all three courts refused to allow the separate classification. *In re Greystone III Joint Venture,* 948 F.2d 134 (5th Cir.1991), *amended and corrected, request for rehearing en banc denied* (Feb. 27, 1992), *cert. denied, Greystone III Joint Venture v. Phoenix Mut. Life Ins. Co.,* — U.S. —, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992); *In re Lumber Exchange Bldg. Ltd. Partnership,* 968 F.2d 647 (8th Cir.1992); *In re Bryson Properties XVIII,* 961 F.2d 496 (4th Cir.1992), *cert. denied, Bryson Properties XVIII v. Travelers Ins. Co.,* — U.S. —, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992). These courts have concluded that if § 1122(a) permits classification of substantially similar claims in different classes, such classification may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of

claims. *Greystone*, 948 F.2d at 139; *Lumber*, 968 F.2d at 649; *Bryson*, 961 F.2d at 502.

In this case, the Court must decide whether debtor's justifications for the proposed separate classification are sufficient and independent of debtor's motivation to secure the vote of an impaired class. Debtor's first justification is that there is a difference in the nature of Hancock's unsecured claim and the trade creditors' claims which supports separate classification. Debtor argues that the trade creditors struck a different bargain with the debtor than did Hancock who provided long-term non-recourse financing. Debtor argues that trade creditors expect prompt payment rather than a long-term payoff, do not look to the property for satisfaction of their claims, have personal recourse against debtor's partners under state law, and have no secured interest in another class to protect.

Debtor cites four bankruptcy cases in support of this argument, two from the Middle District of Tennessee and two from the Northern District of Georgia. The two cases from this district provide only limited support for debtor's position. In *In re Club Associates*, 107 B.R. 385, 401 (Bankr. N.D.Ga.1989), the discussion of the classification issue was very brief,[2] and the case was decided before the three circuit court cases came down which held otherwise. The *In re Pattni Holdings* case, Case No. A90–01638–WHD (Bankr.N.D.Ga. Mar. 19, 1992) (Drake, J.), is an unpublished opinion in which the justification for the separate classification was that the holder of the unsecured deficiency claim, Days Inn, was in fact the seller of the property and had provided a portion of the purchase price for the sale. The court found that Days Inn was sufficiently involved with the debtor to justify a separate classification from general trade creditors. The *Pattni* case does not hold that the non-recourse or long term nature of the claim alone is a sufficient justification for separate classification.

The two cases from Tennessee cited by debtor, *In re Creekside Landing, Ltd.*, 140 B.R. 713 (Bankr.M.D.Tenn.1992) and *In re Aztec Co.*, 107 B.R. 585 (Bankr.M.D.Tenn. 1989), were both decided by Judge Lundin. In both cases, the court held that the unsecured deficiency claim could be separately classified from the trade creditors, because the mortgagee had a non-recourse claim outside of bankruptcy and because it had a secured claim and thus an interest in the proceeding not shared by unsecured creditors.[3] However, in both cases, the court referred to the flexible approach to classifying unsecured claims approved by the Sixth Circuit, citing *In re U.S. Truck*, 800 F.2d 581 (6th Cir.1986), and, in both cases, the court denied confirmation of the plan before it on the basis that the plan unfairly discriminated against the mortgagee's unsecured claim.

The majority of courts have rejected debtor's argument that separate classification is proper solely because the mortgagee's deficiency claim would be non-recourse outside of bankruptcy. *In re Lumber Exchange Bldg. Ltd. Partnership*, 968 F.2d at 649; *In re Bryson Properties XVIII*, 961 F.2d at 502; *In re Greystone III Joint Venture*, 948 F.2d at 139–40; *Piedmont Associates v. CIGNA Property & Casualty Insurance*, 132 B.R. 75, 78 (N.D.Ga.

---

**2.** In fact, the creditor's objection to the separate classification of the unsecured claim in *Club Associates* may have been moot, because it appears that the objecting creditor did not have an unsecured claim to vote. While the creditor CCRI is referred to as "undersecured" at one point, (*Club* at 391), after the Court applied certain post-petition payments, the Court found that the claim was fully secured. *Id.* at 399. This may explain the brevity of the discussion on the classification issue.

**3.** The Court has found two other cases not cited by the parties that appear to accept the argument that an unsecured deficiency creditor may have the incentive to vote against the plan in order to affect the treatment of its secured claim and that this may justify separate classification. *In re Route 37 Business Park Associates*, 146 B.R. 640 (D.N.J.1992) and *In re Bjolmes Realty Trust*, 134 B.R. 1000, 1002–03 (Bankr. D.Mass.1991). However, in *Route 37*, the district court stated that it "was skeptical whether the classification proposed ... would pass muster at a confirmation hearing" (*Route 37*, 146 B.R. at 644).

1991); *In re Cantonwood Associates Ltd. Partnership,* 138 B.R. 648, 653–55 (Bankr. D.Mass.1992); *In re Boston Post Road Ltd. Partnership,* 145 B.R. 745, 748–49 (Bankr.D.Conn.1992); *In re Main Road Properties, Inc.,* 144 B.R. 217, 220 (Bankr. D.R.I.1992); *In re 266 Washington Associates,* 141 B.R. 275, 284–86 (Bankr.E.D.N.Y. 1992), *aff'd, In re 266 Washington Associates,* 147 B.R. 827 (1992); *In re Waterways Barge Partnership,* 104 B.R. 776, 784–86 (Bankr.N.D.Miss.1989); *In re Meadow Glen, Ltd.,* 87 B.R. 421, 426–27 (Bankr. W.D.Tex.1988). *See also* Peter E. Meltzer, *Disenfranchising the Dissenting Creditor Through Artificial Classification or Artificial Impairment,* 66 Am.Bankr.L.J. 281, 297–306 (1991). The reasoning in these cases is persuasive, and the Court rejects debtor's argument that the difference in the nature of Hancock's unsecured claim and the other unsecured claims justifies a separate classification of Hancock's claim.

■ Debtor also argues that the large amount of Hancock's unsecured claim ($2,880,000.00) compared to the small amount of other unsecured claims ($52,000.00) justifies separate classification. The Court disagrees. The only case cited by the debtor holding that the size or amount of the deficiency claim justified separate classification is *Club Associates, supra,* at 401 and, once again, the discussion on this point is very brief. In contrast, a number of courts have specifically rejected the argument that the size or amount of the deficiency claim justifies separate classification. *Lumber Exchange,* 968 F.2d at 649–50; *Piedmont Associates,* 132 B.R. at 78; *Waterways Barge,* 104 B.R. at 785 ("The only difference is the size of the claims which, standing alone, does not amount to a distinguishable dissimilarity"). In fact, the creditor with a large unsecured claim should be allowed to exercise a meaningful vote in the reorganization process and should not be disenfranchised and separated from the other unsecured claims based on size alone.

■ Debtor's third justification is that the treatment proposed for Hancock's unsecured claim is different than the treatment proposed for the other unsecured claims, and different treatment requires separate classification. Hancock agrees that 11 U.S.C. § 1123(a)(4) mandates that claims which are treated differently be placed in separate classes, but Hancock argues that the different treatment here is just an excuse for separate classification and has no independent justification.

Debtor's reasons for treating Hancock's unsecured claim differently than the other unsecured claims go something like this. Debtor argues that it wanted to treat Hancock better than the others, so that Hancock might change its mind and vote for the plan. Debtor argues that Hancock will receive 40% of its unsecured claim, while the trade creditors will receive only 25% of their claims. However, the trade creditors get their 25 cents on the dollar on the effective date of the plan. Hancock receives only 7% of its unsecured claim ($160,000.00) on the effective date. The remaining 33% ($1,000,000.00) is to be paid in annual payments for seven years amortized on an eleven year basis and with a final $400,000.00 payment at the end of the seven years. Debtor argues that it is not proposing to pay the trade creditors over seven years because some of the claims are small, and payment of those claims over time would be unfair to the trade creditors.

Hancock points out the difficulty with debtor's argument. If Hancock is getting "better" treatment, why not offer the same "better" treatment to the other unsecured creditors? Debtor's answer that payment over seven years is "unfair" to the other unsecured creditors suggests that the treatment accorded Hancock is not really "better". The Eighth Circuit rejected somewhat similar arguments in *Lumber Exchange.*

The Court has searched the record and finds no evidence of any valid justification for the different treatment. At the August 26, 1992 hearing, debtor's general partner testified regarding the rationale for classifying Hancock's unsecured claim separately from the unsecured claims of other creditors. He testified as follows:

Q: What was the rationale for classifying Hancock's unsecured claim separately from the unsecured claims of the other creditors? ...

A: In—in addition to being a—a legal matter, I think there is a distinction in that one class of creditors has a lien on the property, and that is Hancock. And the other unsecured creditors just have no recourse.

Q: All right, sir, is there any other basis for your, according to your understanding, for separating Hancock's unsecured claim for the—for all other unsecured claims—from all other unsecured claims?

A: That's—that's my understanding, that there is—that there are legal reasons, in addition to a difference in the recourse. And the—one's given a lien, the others are given—are not given a lien.

(August 26, 1992 transcript, at 27–28.)

The plan discussed at the August 26, 1992 hearing also proposed to pay Hancock 40 cents on the dollar over seven years and 25 cents on the dollar to other unsecured claims at confirmation. While the plan proposed now offers collateral to secure the payments to Hancock, debtor offered no additional evidence to support any justification for the different treatment.

Different treatment does not automatically validate separate classification of the deficiency claim. Several of the cases in which the courts have rejected the separate classification of the unsecured deficiency claim involved plans where the plan treatment of the unsecured deficiency was different from the plan treatment of the other unsecured creditors. *See Lumber Exchange, Piedmont Associates, Boston Post Road, 266 Washington Associates, Waterways Barge,* and *Meadow Glen, supra.* In *Greystone,* where the plan proposed identical treatment but separate classification of the unsecured creditors and the unsecured deficiency, the Court said "Even if Greystone's Plan had treated the trade creditors differently from Phoenix, the classification scheme here is still improper." *Greystone,* 948 F.2d at 141. The Fifth Circuit noted

that at the hearing, none of the debtor's witnesses offered any reason for the separate classification. Here, debtor's witness similarly did not offer any justification for separate classification other than the fact that Hancock also had a secured claim.

■ In summary, classifying Hancock's unsecured claim separately is the only means by which debtor could obtain acceptance of one impaired class, because Hancock would dominate the vote in any class in which it was placed. Since debtor offers no legitimate reason for its separate classification or separate treatment of Hancock's unsecured claim, the Court concludes that the separate classification is an attempt to manipulate the vote to assure that at least one impaired class will vote for the plan and to deprive Hancock from a meaningful vote. Since debtor cannot propose a confirmable plan without improperly classifying Hancock and its unsecured creditors, Hancock's motion for relief from the automatic stay should be granted.

■ It is important to point out that the parties have chosen not to address whether debtor's proposal unfairly discriminates against Hancock's unsecured claim within the meaning of § 1129(b)(1). Hancock simply argues that debtor has offered no justification for separately treating and classifying Hancock's claim, even if the different treatment did not amount to unfair discrimination. At first blush, it might appear that the propriety of classification cannot be decided without first deciding if the different treatment is unfairly discriminatory. However, the Court in *266 Washington Associates* explained the difference between the issues of unfair discrimination and claims classification as follows:

The Debtor further asserts that there is no issue of improper classification so long as a plan does not unfairly discriminate between classes of similar claims, and the Amended Plan and any other plan the Debtor might propose, the Debtor argues, does not and would not unfairly discriminate between such claims. Whether or not a plan discriminates unfairly is besides the point at this juncture. The Debtor hopelessly confuses

two discrete legal issues by merging them into a seamless web. Unfair discrimination is a cram down issue under 11 U.S.C. § 1129(b)(1). Classification of claims are 11 U.S.C. §§ 1122 and 1129(a)(10) issues, the propriety of which will determine whether cram down could even be considered by a bankruptcy court.

*In re 266 Washington Associates,* 141 B.R. at 286.

The Court agrees with *266 Washington Associates* and finds that in this case, the Court does not need to decide whether the plan violates the unfair discrimination provision of § 1129(b)(1) in order to reject separate classification.

 The Court is aware that there is a sharp difference of opinion on the issues raised in this case. *See* Peter E. Meltzer, *Disenfranchising the Dissenting Creditor Through Artificial Classification or Artificial Impairment,* 66 Am.Bankr.L.J. 281, 297–306 (1991) and Linda J. Rusch, *Gerrymandering the Classification Issue in Chapter Eleven Reorganizations,* 63 Univ. Colo.L.Rev. 163 (1992). The Court is also aware that the resolution of the classification issues in a given case dramatically affects the outcome of a case. If separate classification of the deficiency claim is not allowed, then the large deficiency creditor will have an absolute veto over any plan and the debtor will not be able to use the cramdown provisions of § 1129(b) to keep the real estate. On the other hand, the requirement of voting in a Chapter 11 case and the requirement that an accepting class have at least two-thirds in amount and more than one-half in number suggest that a large creditor will have a certain amount of leverage in the proceeding. Unfortunately, the statute does not clearly allow or prohibit the separate classification at issue here, and the best the courts can do is analyze each case in light of the general rule that separate classification of similar claims is permissible, so long as the classification is based on reasonable justifications and not for the purpose of gerrymandering the vote. The courts have not held and this Court does not hold that there is a *per se* rule prohibiting separate classification of a deficiency claim in all Chapter 11 cases. However, in the single asset real estate case where there is a large undersecured creditor and a comparatively small amount of trade debt, the debtor's use of the cramdown procedures by disenfranchising the largest creditor's voting rights should be scrutinized carefully.

In accordance with the above reasoning, Hancock's motion for relief from the automatic stay is hereby GRANTED.

IT IS SO ORDERED.