## In re AUSTIN OCALA LIMITED, Debtor.

Bankruptcy No. 91–05926–3P1.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville/Ocala Division.

March 11, 1993.

See also 150 B.R. 279.

Douglas P. McClurg, Tampa, FL, for NationsBank.

Joel S. Treuhaft, Tampa, FL, for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DENIAL OF CONFIRMATION OF DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION

GEORGE L. PROCTOR, Bankruptcy Judge.

**THIS CASE** was heard on February 12, 1993, to consider confirmation of the Second Amended Plan of Reorganization filed by the debtor-in-possession. Austin Ocala Limited (the "Debtor") and the objection to confirmation filed by NationsBank of Florida, N.A., successor by merger to NCNB National Bank of Florida ("NationsBank"). Based on the evidence admitted at the hearing, the Court makes the findings of fact and conclusions:

### Findings of Fact

1. This chapter 11 case was commenced on November 12, 1991, by the filing of a voluntary petition by the Debtor. No trustee or examiner has been appointed, and the Debtor has continued in the possession of the property and the management and operation of its business.

2. The Debtor is a Florida limited partnership. Thus, its equity interest holders are its general and limited partners.

3. The Debtor's sole asset consists of the real and personal property comprising

a hotel commonly known as the Howard Johnson's Park Square Inn located in Ocala, Florida (the "Hotel"). The Debtor's sole business activity is the ownership of the Hotel, which is managed under contract by Florida Hospitality Group, Inc., the shareholders of which are also general or limited partners of the Debtor.

4. NationsBank is the current owner and holder of a promissory note in the original principal amount of $6,500,000, later increased to $7,000,000, executed and delivered by the Debtor to NationsBank's predecessor in interest (the "Note") and a mortgage and security agreement (the "Mortgage") which secures payment of the Note. The Mortgage constitutes a first priority mortgage lien on and a security interest in all of the real and personal property comprising the Hotel.

5. At the petition date, the NationsBank mortgage loan was in default for the Debtor's failure to pay the regular monthly interest payment due on May 15, 1991, and all subsequent payments. Based on the default, NationsBank accelerated the loan and demanded payment. Notwithstanding the acceleration, the loan would have matured by its own terms on September 21, 1991.

6. At the petition date the balance due on the loan evidenced by the Note and Mortgage was $7,041,561.08, comprised of $6,500,000 in principal and $541,561.08 in interest.

7. By separate order the Court has established the market value of the Hotel, as of the petition date to be $3,650,000.

8. Based on this valuation, NationsBank has a secured claim in the amount of $3,650,000 and an unsecured claim for a deficiency in the amount of $3,391,561.08.

9. A second mortgage on the Hotel is held by Essex Franchise Systems, Inc. ("Essex"). According to the Debtor's schedules, the amount due Essex in connection with the second mortgage is $493,933.28. Based on a $3,650,000 valuation of the Hotel, Essex's claim is entirely unsecured.

10. The Debtor filed an Amended Plan of Reorganization and an Amended Disclosure Statement in September, 1992 (the "Disclosure Statement"). The Disclosure Statement was approved by the Court. The Debtor filed a Second Amended Plan of Reorganization (the "Plan") in February, 1993.

11. The Plan purports to create fourteen classes of claims and interests. Classes I through VII are comprised entirely of priority tax claims. Class VIII is comprised of NationsBank's secured claim. Class IX is comprised of NationsBank's deficiency claim. Class X is comprised of Essex's claim. Class XI is comprised of the pre-petition executory contract, a hotel franchise agreement, entered into between the Debtor and Howard Johnson Franchise Systems, Inc. ("Howard Johnson"). Class XII is comprised of all non-insider unsecured claims without priority, excluding NationsBank and Essex. Class XIII is comprised of all unsecured claims held by insiders. Finally, Class XIV is comprised of the equity interests held by the Debtor's general and limited partners.

12. Under the Plan, the Debtor proposes the following treatment. The priority tax claims (Classes I–VII) already have been paid in full and, thus, are unimpaired. NationsBank's secured claim (Class VIII) is to be amortized over 30 years accruing interest at 8% per annum and payable monthly. In addition to the monthly payments, NationsBank is to receive on account of its secured claim one-half of all net cash flow generated by the Hotel on an annual basis after all unsecured creditors other than insiders have been paid in full. NationsBank's unsecured deficiency claim (Class IX) is to be secured by a second mortgage and paid in full, without interest, annually out of net cash flow on a pro rata basis with Essex after all other non-insider unsecured creditors have been paid in full. Essex's claim (Class X) is to be granted a third mortgage and paid in full, without interest, annually out of net cash flow on a pro rata basis with NationsBank's deficiency claim after all other non-insider unsecured creditors have been paid in full. Howard Johnson's executory contract

(Class XI) is to be assumed and modified to provide that the franchise agreement is terminable annually by the Debtor under certain conditions. The non-insider unsecured creditor class (Class XII) is to be paid in full, without interest, annually out of net cash flow beginning in 1993 before payment of the unsecured claims of Nations-Bank and Essex. The insider unsecured creditor class (Class XIII) is to be paid in full, without interest, annually from net cash flow after all non-insider secured and unsecured creditors have been paid in full. Finally, under the Plan the Debtor's general and limited partners (Class XIV) are to retain their equity interests in exchange for an aggregate contribution of new equity capital in an amount not to exceed $15,-000.

13. All classes except Classes I–VII are impaired.

14. Notwithstanding the Debtor's creation in the Plan of multiple classes, the evidence indicates that only three classes of claims and interests exist: 1) a class comprised of NationsBank's secured claim of $3,650,000; 2) a class comprised of all unsecured claims, including the claims of NationsBank, Essex, Howard Johnson, trade creditors and insiders, of approximately $4,885,000; and 3) the Debtor's equity interest holders. The claims of trade creditors, NationsBank, Essex, Howard Johnson, and the insiders are all substantially similar—pure general unsecured claims and should be classified accordingly. The Debtor has not demonstrated sufficient justification for separate classification of these substantially similar claims.

15. NationsBank voted both its secured claim and its unsecured claim to reject the Plan. Further, according to the previous testimony of a representative of Nations-Bank, the bank would vote both claims to reject any plan that does not provide either immediate payment in full of the Nations-Bank mortgage loan or immediate transfer to NationsBank of clear title to the Hotel.

16. If all true unsecured creditors' claims are classified together in a single class, NationsBank holds 69% of the dollar amount of the claims and, therefore, controls the vote of that class.

17. The Debtor has not obtained the acceptance of the Plan from all impaired classes of creditors.

18. Assuming a proper classification of unsecured claims, the Debtor has not obtained acceptance of the Plan of at least one class of impaired claims.

19. The Plan does not comply with the applicable provisions if Title 11, specifically, the requirements of 11 U.S.C. § 1122, because the unsecured claims are improperly divided into separate classes.

20. However, the Debtor has met its burden of proof and satisfied all of the requirements for confirmation of the Plan contained in section 1129(a) of the Bankruptcy Code except subparts (1), (8) and (10).

### Conclusions of Law

1. Section 1122 of the Bankruptcy Code provides that a plan may place a claim in a particular class only if such claim is substantially similar to the other claims in the class. 11 U.S.C. § 1122. Although the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case, this discretion is not unlimited. *In re Holywell Corporation*, 913 F.2d 873, 880 (11th Cir.1990). There is a limit on a debtor's power to classify creditors. *Id.* "If a plan unfairly creates too many or too few classes, if the classifications are designed to manipulate class voting, or if the classification scheme violates basic priority rights, the plan cannot be confirmed." *Id.* As interpreted by the courts, absent sufficient justification section 1122 requires that an allowed unsecured deficiency claim, such as Nations-Bank's, be placed in the same class as other unsecured claims. *See In re Valrico Square Limited Partnership*, 113 B.R. 794, 795 (Bankr.S.D.Fla.1990); *In re Lumber Exchange Building Partnership*, 125 B.R. 1000 (Bankr.D.Minn.1991), aff'd, 134 B.R. 354 (D.Minn.1991), aff'd 968 F.2d 647 (8th Cir.1992); *John Hancock Mutual Life Ins. Co. v. Route 37 Business Park As-*

soc. 's, 987 F.2d 154 (3d Cir.1993). Separate classification of similarly situated claims violates section 1122 and is deemed to be an improper separation of claims to manipulate voting. *In re Valrico Square Limited Partnership, supra.*

 2. The Debtor's Plan proposed to separately classify NationsBank's unsecured deficiency claim, Essex's unsecured claim, non-insider unsecured claims, and insider unsecured claims. The Debtor failed to offer a sufficient justification for the separate classification of these claims, all of which are nothing more than general unsecured claims. The only possible explanation for separate classification is an attempt by the Debtor to manipulate voting on the Plan. The Fifth Circuit recently enunciated "one clear rule" with respect to the classification of claims, "thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan." *Matter of Greystone III Joint Venture*, 948 F.2d 134, 139 (5th Cir.1992). *See also, In re U.S. Truck Co., Inc.*, 800 F.2d 581, 586 (6th Cir.1986). Absent a compelling reason, which has not been demonstrated by the Debtor in this case, it is improper to separately classify an unsecured deficiency claim, such as NationsBank's claim, from other general unsecured claims. *Id.; In re Cantonwood Associates Limited Partnership*, 138 B.R. 648 (Bankr.D.Mass.1992).

3. The Court concludes that the Debtor has failed to satisfy the requirements of 11 U.S.C. § 1129(a)(1) because the Debtor has failed to satisfy the requirements of 11 U.S.C. § 1122.

4. Also, the Debtor has failed to satisfy the requirements of 11 U.S.C. § 1129(a)(8) because all impaired classes have not voted to accept the Plan.

5. Properly classifying all unsecured claims in a single class, the Debtor has failed to satisfy the requirements of 11 U.S.C. § 1129(a)(10) because at least one impaired class has not voted to accept the Plan.

6. Even if the Debtor and the Plan had met all of the requirements of 11 U.S.C. § 1129(a) except the voting requirements of subpart (8), the Court could confirm the Plan only if the additional requirements of 11 U.S.C. § 1129(b) also were met. Given the Court's finding and conclusion that the requirements of § 1129(a) have not been met, it is not necessary for the Court to take evidence or entertain argument as to the requirements of § 1129(b).