**In re BOSTON POST ROAD LIMITED PARTNERSHIP.**

**BOSTON POST ROAD LIMITED PARTNERSHIP,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for the New Connecticut Bank and Trust Company.**

Bankruptcy No. 2–91–03498.
Civ. No. 2:92CV892(AHN).

United States District Court,
D. Connecticut.

May 28, 1993.

---

Andrew J. Brand, Suisman, Shapiro, Wool, Brennan & Gray, PC, New London, CT, for plaintiff.

Walter E. Paulekas, Levin & D'Agostino, Hartford, CT, for defendant.

## RULING ON APPEAL FROM BANKRUPTCY ORDER

NEVAS, District Judge.

Appellant Boston Post Road Limited Partnership ("Debtor"), appeals the Bank- ruptcy Court's October 2, 1992 order, the Honorable Robert L. Krechevsky, Judge, denying confirmation of the Debtor's sec- ond amended plan for reorganization under Chapter 11 of the Bankruptcy Code (the "Order") 145 B.R. 745.

The Debtor challenges the Bankruptcy Court's findings concerning the propriety of the Debtor's proposed classification of claims under 11 U.S.C. § 1129. For the reasons that follow, the Order denying con- firmation is affirmed.

## I. Background

The Debtor is a limited partnership formed for the purpose of acquiring and managing a real estate project located at 161 Boston Post Road in Waterford, Con- necticut. In 1988, the Debtor mortgaged the property to the New Connecticut Bank and Trust ("CBT") to secure a $1,600,- 000.00 loan. The Debtor defaulted in the mortgage payments and CBT initiated a foreclosure action in state court. The FDIC subsequently became the holder of the Debtor's mortgage and pursued fore- closure against the Debtor. On August 1, 1991, the Connecticut Superior Court en- tered a judgment of strict foreclosure. On October 28, 1991, the Debtor's law day for redemption, the Debtor filed a *pro se* peti- tion for relief under Chapter 11 of the Bankruptcy Code. Pursuant to this action, the Bankruptcy Court approved the Debt- or's fourth amended disclosure statement. After a hearing, the Bankruptcy Court de- nied confirmation of the Debtor's second amended plan of reorganization (the "Plan"), and the Debtor now appeals this Order.

## II. *Standard of Review*

28 U.S.C. § 158(a) vests the district court with jurisdiction to hear appeals of final bankruptcy orders. In exercising this appellate jurisdiction, the court reviews the Bankruptcy Court's conclusions of law *de novo*, and its findings of fact under the clearly erroneous standard. *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988– 89 (2d Cir.1990), *cert. denied,* —— U.S.

——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *Travelers Insur. Co. v. Bryson Properties (In re Bryson Properties)*, 961 F.2d 496, 499 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992).

### III. *Discussion*

#### A. *Overview of Applicable Bankruptcy Provisions*

■ To retain control over property under Chapter 11, a debtor must propose a plan of reorganization that is confirmed by a bankruptcy court. A reorganization plan must separate different creditors' interests into classes of interest. Only creditors with similar claims may be classified together. 11 U.S.C. § 1122(a). This ensures that similar interests are accorded similar priority in the reorganization scheme. If the interests represented by a class are "altered" by the reorganization plan, the class is considered to be "impaired" under the plan. 11 U.S.C. § 1124(a).

■ The code provides that a reorganization plan may not be confirmed unless all impaired classes approve of the proposed plan. 11 U.S.C. § 1129(a)(7). A class approves a plan if more than one-half of the holders representing at least two-thirds of the interests in the class favor the plan. 11 U.S.C. § 1126(c). "Nonimpaired" classes, those creditors whose claims are unaltered, are presumed to approve of the reorganization plan. 11 U.S.C. § 1126(f).

■ Where all impaired classes have not approved of a plan, § 1129 provides that a plan may still be confirmed if "at least one impaired class approves the plan ... and the debtor fulfills the cramdown requirements of § 1129(b)." *Phoenix Mutual Life Insur. v. Greystone III Joint Venture (In re Greystone III)*, 948 F.2d 134, 138 (5th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 72, 121 L.Ed.2d 37 (1992). This procedure is termed "cramdown" because it enables a debtor to force the plan on dissenting classes so long as one impaired class approves and the plan is fair and equitable to the impaired classes. 11 U.S.C. § 1129(a)(10), (b)(1).

■ The Bankruptcy Code provides that an undersecured creditor, such as the FDIC, may treat its claim in two ways. First, under 11 U.S.C. § 506(a), an undersecured creditor may bifurcate its claim into two claims: a secured claim to the extent of the value of the collateral, and an unsecured claim for the remainder of the debt, which is the undersecured creditor's "deficiency claim." Alternatively, the creditor may elect to have its total claim treated as one secured claim under 11 U.S.C. § 1111(b)(2).

#### B. *The Present Appeal*

The Debtor's Plan included two separate classes of unsecured claims: one represented the FDIC deficiency claim and the other represented the unsecured trade interests, a significantly smaller group of interests. In addition, the Debtor characterized all of the classes as impaired. On appeal, the Debtor contends that the Bankruptcy Court erred in ruling that the separate classification of unsecured trade claims from the deficiency claim was improper, and that the Class 3 holders were not impaired under the Plan.

##### 1. *Classification*

Whether it is proper to classify an undersecured creditor's deficiency claim separately from other unsecured trade claims is an issue of considerable significance to the Debtor as the proposed isolation of the FDIC's deficiency claim from the other unsecured claims is critical to the Debtor's ability to invoke the cramdown provisions of the 11 U.S.C. § 1129. If the claims are not classified separately, the FDIC could block acceptance by the class because it holds such a large percentage of the unsecured claims.[1]

■ The court recognizes that the standards governing the classification of unsecured claims are not unyielding. Although 11 U.S.C. § 1122 bars the placement of disparate claims within the same class, "it

---

**1.** The unsecured trade creditors' claims total approximately $5000.00, whereas the FDIC mortgage deficiency claim totals approximately $500,000.00

does not ... require that all substantially similar claims be placed within the same class, and it grants some flexibility in classification of unsecured claims." *In re Bryson Properties*, 961 F.2d at 502; *see also 266 Washington Assoc. v. Citibank (In re Washington Assoc.)*, 147 B.R. 827, 830 (Bankr.E.D.N.Y.1992); 11 U.S.C. § 1122(a). However, "the [Bankruptcy] Code was not meant to allow a debtor complete freedom to place substantially similar claims in separate classes," *John Hancock Mutual Life Insur. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154, 158 (3d Cir.1993), and it is clear that there are "at least some limits on separate classification of claims with similar priority." *In re Washington Assoc.*, 147 B.R. at 830. In particular, courts have held that classes may not be manipulated so as to gerrymander the voting process and circumvent the 11 U.S.C. § 1129 requirements. *See, e.g., Hancock*, 987 F.2d at 159; *In re Bryson Properties*, 961 F.2d at 502; *In re Greystone III*, 948 F.2d at 138–39; *In re U.S. Truck Co.*, 800 F.2d 581, 586 (6th Cir.1986).

In *Greystone III*, for example, the Fifth Circuit found that while it could not "conclude categorically that § 1122(a) prohibits the formation of different classes from similar types of claims ...," *id.* at 138, such classification "may only be undertaken for reasons independent of the debtor's motivation to secure the vote of an impaired, assenting class of claims." *Id.* at 139.[2]

■■■ The Fifth Circuit also noted that this classification issue requires two standards of appellate review. The similarity of claims and propriety of classification are legal issues that are reviewed by the court *de novo. See also Lumber Exch. Bldg. Ltd. Partnership v. Mutual Life Insur. Co. (In re Lumber Exch.)*, 968 F.2d 647 (8th Cir.1992). Yet whether legitimate business reasons justify the separate classification of claims is a question of fact reviewed under the clearly erroneous standard. *See In re Greystone III*, 948 F.2d at 140 n. 5, 141 n. 7.

■■■ Applying these principles, the Debtor is correct that the separation of an undersecured creditor's deficiency claim from other unsecured claims is not impermissible *per se*. However, such a classification will only be upheld where there is a valid and compelling reason for the separation. *See, e.g., In re Lumber Exch.*, 968 F.2d at 650; *In re Bryson Properties*, 961 F.2d at 502; *In re Austin Ocala Ltd.*, 152 B.R. 773 (Bankr.M.D.Fla.1993); *In re Roswell–Hannover Joint Venture*, 149 B.R. 1014, 1018 (Bankr.N.D.Ga.1992). Accordingly, the court now turns to the Debtor's alleged reasons for the isolation of the deficiency claim from the unsecured trade claims.

■■■ The Debtor first argues that separate classification is justified because the claims are not substantially similar. Specifically, the Debtor contends that the fact that the FDIC could elect to treat its whole claim as secured under § 1111(b)(2) distinguishes the FDIC's claim from the other unsecured claims. However, this argument is wholly inconsistent with "the [Bankruptcy] Code's elimination of any legal distinction between the nonrecourse deficiency claims and other unsecured claims." *In re Washington Assoc.*, 147 B.R. at 831; *accord In re Greystone III*, 948 F.2d at 139 ("the Code has eliminated the legal distinction between non-recourse deficiency claims and other unsecured claims."); *In re Cantonwood Assoc.*, 138 B.R. 648, 657 (Bankr.D.Mass.1992) (holding that the right to make an election under § 1111(b) does not warrant separate classification); *cf. In re 500 Fifth Ave. Assoc.*, 148 B.R. 1010, 1021 (Bankr.S.D.N.Y.1993) ("The distinction between recourse and nonrecourse claims ... is irrelevant within the realm of chapter 11."). Indeed, how the FDIC's deficiency claim and the trade creditors' claims achieved their status, and whether the FDIC *could* have elected a

---

**2.** The Debtor's reliance on *Triple R Holdings*, 134 B.R. 382 (Bankr.N.D.Cal.1991) in opposition to the Fifth Circuit's analysis, (*see* Appellant's Brief at 24), is inappropriate as the case was reversed and is thus of little precedential value. *See Triple R Holdings*, 145 B.R. 57 (Bankr. N.D.Cal.1992) (reversing *Triple R Holdings*, 134 B.R. 382).

different status, "does not alter their current [and common] legal character and thus does not warrant separate classification." *In re Lumber Exch.*, 968 F.2d at 649.

■ Furthermore, the Debtor's argument that separate classification is necessary to prevent the FDIC from dominating the unsecured class and barring the Debtor from access to the § 1129 cramdown provisions is equally unavailing. Generally, courts have rejected the argument that the size or amount of a deficiency claim justifies separate classification. *See, e.g., In re Lumber Exch.*, 968 F.2d at 649–50; *In re Roswell–Hannover*, 149 B.R. at 1020. The court is well aware that an undersecured creditor with a large deficiency claim may threaten a debtor's ability to satisfy the § 1129 cramdown requirements. Yet this is the undersecured creditor's prerogative, and not a basis for segregation. *See In re 500 Fifth Ave. Assoc.*, 148 B.R. at 1021 ("the purpose of the section 1111(b) election is to allow the undersecured creditor a right to potentially dominate the vote within the unsecured class."). Indeed, to hold otherwise would vitiate the undersecured creditor's right to elect recourse status under 28 U.S.C. § 1111(b) and vote within the unsecured class. *See In re Lumber Exch.*, 968 F.2d at 649–50; *In re Greystone III*, 948 F.2d at 140; *In re 500 Fifth Ave. Assoc.*, 148 B.R. at 1020–21.

■ Finally, the Debtor argues that there are sound business reasons for the separate classification but that the Bankruptcy Court did not entertain evidence in support of these alleged justifications. The Debtor correctly asserts that whether valid business reasons justify the separate classification of claims requires a factual

inquiry. *See In re Greystone III*, 948 F.2d 141 n. 7. Here, however, the Bankruptcy Court acknowledged, and rejected, the Debtor's purported business reasons for the classification. (*See* Order at 8–10.) Although the Bankruptcy Court's inquiry would have been clearer had the Bankruptcy Court set forth the facts upon which it premised its finding, the court lacks any basis to dismiss the Bankruptcy Court's finding as clear error.[3]

Thus, in the absence of a valid justification for the isolation of the FDIC deficiency claim, the court cannot find, as it must to uphold the scheme, that each proposed class represents "a voting interest that is sufficiently distinct and weighty to merit a separate voice in the decision whether the proposed reorganization should proceed." *Hancock*, 987 F.2d at 159. Rather, the court agrees with the Bankruptcy Court that the only reason for the Debtor to segregate the substantially similar unsecured claims is "to fabricate an accepting class under 11 U.S.C. § 1129(a)(10) in order to effectuate a cramdown." *In re Washington Assoc.*, 147 B.R. at 832. Therefore, the Debtor's proposed classification scheme is impermissible and the Bankruptcy Court's decision is affirmed. *See id.* (affirming bankruptcy court because only possible reason was impermissible); *In re Lumber Exch.*, 968 F.2d at 650 (affirming bankruptcy court because classification was a "thinly veiled attempt to manipulate the vote....").

## 2. *Impaired Class*

The Debtor also challenges the Bankruptcy Court's finding that the Plan's Class 3 was not an "impaired" class. The Plan provided that Class 3 holders, tenants with

---

**3.** The court is troubled by the Debtor's assertion that it was precluded from presenting evidence to the Bankruptcy Court in support of its business reasons for classification. At the oral argument on this appeal, this court specifically asked the Debtor's counsel what evidence it would present in support of the alleged business justifications—in essence, what evidence it was precluded from offering previously. The Debtor's counsel did not respond directly to this question, but rather, relied on the fact that, unlike the unsecured classes in *Greystone III*, each proposed class of unsecured claims was

treated differently under the Debtor's Plan. While this difference in treatment may be consistent with the Debtor's argument that business reasons justify the separate classification, it is not itself evidence of the purported business reasons. Moreover, even if the difference in treatment were apposite to the classification analysis, this is a matter that was clearly before the Bankruptcy Court. Therefore, the court agrees with the FDIC that the Bankruptcy Court adequately entertained the Debtor's asserted business reasons.

security deposits, would receive a higher interest rate on their security deposits (8%) than the statutory rate (5.25%), and the Debtor described this class as an impaired assenting class. The Bankruptcy Court found that Class 3 was not "impaired" under the Plan because their interests were not affected by the Plan.

The Debtor argues that the Bankruptcy Court erred because the interests of a class need only be altered, not harmed, to be "impaired" under the code. Thus, the Debtor contends that because Class 3 would receive a higher interest rate, their interests are sufficiently altered to be deemed impaired under the code.

 The Debtor's position is largely without merit. The Debtor is correct that the value of a claim is not determinative of whether the claim is "impaired" within the meaning of § 1124. *See In re Barrington,* 15 B.R. 952, 962 (Bankr.D.Utah 1981). Rather, the emphasis under § 1124 is on rights, not values: § 1124 provides that a class is impaired under a plan unless "the plan leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder...." 11 U.S.C. § 1124(1); *see also In re Barrington,* 15 B.R. at 962–63 & n. 23. Therefore, a class is impaired where rights to the claims are altered, even if such alteration enhances or has no impact on the value of the claims. *Id.*

In a flawed syllogistic attempt, the Debtor argues that because a class may be impaired even where the value of the claim is enhanced, then where the value of a claim is enhanced, the class is impaired. Yet this conclusion is neither supported by law nor logic. First, as the Bankruptcy Court noted, "if the [D]ebtor were correct, ... any time a plan proponent needed an impaired class for a favorable vote, the debtor would simply add $1.00 to such class members' claims—a transparent and unacceptable stratagem." (Order at 7.) Moreover, the fact that the value of a claim is enhanced by a plan has no bearing on whether the class of claims is impaired, absent a finding that the rights of the class are altered as well. *See* 11

U.S.C. § 1124(1). Here, the Debtor does not argue that the rights of the Class 3 members were altered, nor does the record indicate any such alteration. Thus, the Bankruptcy Court properly found that Class 3 was not impaired under the Plan.

*Conclusion*

Based on the foregoing, the Bankruptcy Court's Order denying confirmation of the Plan is AFFIRMED.

SO ORDERED.